OPINION
Plaintiffs-appellants Barbara Cornett and Ronald Cornett appeal from a summary judgment rendered against them upon their complaint against defendants-appellees State Farm Insurance Company and Kenneth Whitfield, State Farm's agent. The Cornetts contend that the trial court erred by proceeding to decide State Farm's motion for summary judgment, notwithstanding the pendency of a discovery dispute, and also that there are genuine issues of material fact precluding summary judgment. Because there was no motion for relief pursuant to Civ.R. 56(F), we conclude that the trial court did not err by proceeding to decide the motion for summary judgment. Although we agree with State Farm that it succeeded in demonstrating that there were no genuine issues of material fact with respect to all other claims, we conclude that State Farm failed to demonstrate the non-existence of a genuine issue of material fact with respect to the Cornetts' allegation that Whitfield, State Farm's agent, "misrepresented to them * * * that [they] would ultimately be able to recover under the separate insurance policies because they were made to pay separate premiums on said policies." Accordingly, that part of the judgment concerning the Cornetts' fraud and punitive damages claims is reversed, the judgment of the trial court is affirmed in all other respects, and this cause is remanded for further proceedings consistent with this opinion.
 I
The Cornetts purchased four motor vehicle insurance policies from State Farm. One of these covered a 1995 Harley motorcycle. The others covered other vehicles owned by the Cornetts. The motorcycle policy included uninsured/underinsured motorist coverage with per person limits of $100,000 and per accident limits of $300,000. The other three policies each included uninsured/underinsured motorist coverage with per person limits of $50,000 and per accident limits of $100,000.
On March 3, 2000, with all of these policies being in effect, Ronald Cornett was rear-ended while he was stopped at a red light on his motorcycle. As a result, Ronald Cornett sustained serious injuries. The Cornetts settled with the tortfeasor for his policy limits of $25,000. The Cornetts then brought this action against State Farm and Whitfield, setting forth claims for relief for: (1) return of insurance premiums based on a failure to disclose; (2) fraud; (3) negligence; (4) unjust enrichment; and (5) punitive damages.
State Farm and Whitfield moved for summary judgment, contending that there were no genuine issues of material fact, and that they were entitled to judgment as a matter of law. The Cornetts responded with an answering memorandum, and State Farm and Whitfield responded with a reply memorandum. The trial court found State Farm and Whitfield's motion to be well taken, and rendered summary judgment accordingly. From that judgment, the Cornetts appeal.
 II
The Cornetts' First Assignment of Error is as follows:
 "SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED AGAINST APPELLANTS BY THE TRIAL COURT AS DISCOVERY ISSUES REMAINED UNRESOLVED DENYING THE PARTIES THE OPPORTUNITY TO DEVELOP THE FACTUAL FOUNDATION UPON WHICH A SUMMARY JUDGMENT DETERMINATION COULD BE PREDICATED."
The Cornetts argue that they had a motion to compel discovery pending before the court when it rendered summary judgment. They argue that the trial court ought not to have rendered summary judgment until that discovery dispute had been resolved. The Cornetts cite Martin v. GrangeMut. Ins. Co. (2001), 143 Ohio App.3d 332. In that case, the court found that the defendant insurance company had failed to meet its burden, underDresher v. Burt (1996), 75 Ohio St.3d 280, of demonstrating that there was no genuine issue of material fact. The Cornetts appear to be relying upon the following paragraph in the Martin opinion.
"Here, the trial court never considered appellee's prior actions with respect to notifying its insureds. Indeed, by limiting discovery to those issues raised in appellee's motion for summary judgment, the parties never had the opportunity to develop the factual foundation upon which such a summary judgment exercise could be predicated." Martin v.Grange Mut. Ins. Co., supra, at 339.
In view of the fact that the court held that the insurer failed to meet its burden of establishing that there was no genuine issue of material fact, it is not clear that the trial court's limitation of discovery in that case was a separate ground for reversal. If it was, however, it is significant that the trial court had sustained the insurer's motion to stay discovery until after the summary judgment motion had been decided, agreeing with the insurer that the matters subject to pending discovery had no relevance to the legal issues driving the summary judgment motion. If the order staying discovery adversely affected the plaintiffs in that case, then it would have constituted prejudicial error, justifying reversal of the judgment.
In the case before us, by contrast, the trial court did not enter an order staying discovery until after the summary judgment motion was decided.
We have consistently held that: "Parties who find themselves in a position of having to respond to a motion for summary judgment before adequate discovery has been completed must seek their remedy through Civ.R. 56(F). A party who fails to seek such relief does not preserve his right to challenge the adequacy of discovery upon appeal." SecurityNational Bank and Trust Co. v. Jones (July 6, 2001), Clark App. No. 02-CA-59; Clark Co. Solid Waste District v. Danis Clarkco Landfill Co. (1996), 109 Ohio App.3d 19, 36. The Cornetts did not seek a continuance pursuant to Civ.R. 56(F). Accordingly, they cannot now complain that the trial court should have waited before deciding State Farm's motion for summary judgment.
The Cornetts' First Assignment of Error is overruled.
 III
The Cornetts' Second Assignment of Error is as follows:
 "THE TRIAL COURT'S GRANT OF APPELLEES' MOTION FOR SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE THE COURT ERRED IN NOT CONSIDERING THE FACTS AND CLAIMS ALLEGED IN THE COMPLAINT, BUT RATHER IGNORED SAID CLAIMS AND RENDERED A DECISION IN FAVOR OF A NARROWLY FOCUSED CONSIDERATION OF THE INSURANCE CONTRACT."
In analyzing the Cornetts' claims for relief, there are two aspects of their uninsured/underinsured motorist coverage that must be considered. The first of these is the other-owned vehicle exclusion in each insurance policy. These exclusions provide, in pertinent part, as follows:
"There is no [uninsured/underinsured motorist] coverage:
"* * *
"(2) For bodily injury to an insured:
"(a) while occupying or
 "(b) through being struck by a motor vehicle owned by you, your spouse, or any relative if it is not insured for this coverage under this policy." (Emphasis in original.)
Because of the above-quoted exclusion, the Cornetts would not have had uninsured/underinsured motorist coverage for injuries they sustained while occupying one of their four vehicles, unless the policy insuring that vehicle included uninsured/underinsured motorist coverage.
The other aspect of the uninsured/underinsured motorist coverage that must be considered is the anti-stacking provision in each policy. Those provisions read, in pertinent part, as follows:
"If There is Other Similar Coverage
"1. If Other Policies Issued by Us to You Apply
 "If two or more motor vehicle liability policies issued by us to you providing uninsured motor vehicle coverage apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."
Elsewhere in each policy, the following provision appears:
"Limits of Liability.
"* * *
"3. The limits of liability are not increased because:
"a. more than one vehicle is insured under this policy; or
 "b. more than one person is insured at the time of the accident * * *
"Subject to the above, the most we pay for all damages arising out of and due to bodily injury to one person is the lesser of:
 "1. The difference between the `each person' limits of liability of this coverage and the amount paid for that bodily injury by or for any person or organization who is or who may be held legally liable for the bodily injury; or
 "2. the difference between the amount of damages for such bodily injury, and the amount paid for that bodily injury by or for any person or organization who is or who may be held legally liable for the bodily injury."
In short, the other-owned vehicle exclusion requires the insured to have uninsured/underinsured motorist coverage for the vehicle occupied by the insured at the time of the accident and prevents the insured from recovering under the uninsured/underinsured motorist coverage pertaining to an insurance policy for some other vehicle. The anti-stacking provision prevents the insured from recovering uninsured/underinsured motorist coverage benefits under more than one policy for one accident.
With these provisions in mind, we may consider the claims for relief in the Cornetts' Amended Complaint. In their Amended Complaint, there are sixteen numbered paragraphs preceding any of the claims for relief. In paragraph fourteen, the Cornetts allege that they were not told that their payment of premiums for uninsured/underinsured motorist coverage for their multiple insurance policies were unnecessary, and could not be used. However, as State Farm points out, these multiple premiums were necessary, because each premium resulted in coverage for injuries sustained while occupying one motor vehicle, but not coverage for injuries sustained while occupying any of the other three motor vehicles.
In their First Claim for Relief, which the Cornetts denominate as "Action for Return of Insurance Premiums Based on a Failure to Disclose," the Cornetts allege:
 "* * * that defendant, Agent Whitfield, has obtained such premiums without effectively and unambiguously communicating to its insureds that only one vehicle in the household need have uninsured/underinsured motorist coverage in order to provide such protection to all resident relatives in the household."
Again, as State Farm points out, Whitfield would seriously have breached his duty to the Cornetts had he made that representation. Because each policy excluded uninsured/underinsured motorist coverage for the other three vehicles, each policy was necessary to obtain uninsured/underinsured motorist coverage with respect to the particular vehicle covered by that policy. Accordingly, we agree with the trial court that no genuine issue of material fact exists with respect to the Cornetts' First Claim for Relief, and that State Farm is entitled to judgment on this claim, as a matter of law.
The Cornetts' Third Claim for Relief, denominated "Negligence," seems to concern both the other-owned vehicle exclusion and the anti-stacking provision. The essence of this claim is set forth in paragraphs thirty-four and thirty-six as follows:
 "34. Plaintiff, Barbara Cornett, further states that Defendants had a duty of good faith and fair dealing to inform Plaintiffs that under Ohio law, Plaintiffs cannot stack insurance policies. Plaintiff further states that Defendants never informed Plaintiffs of same and allowed Plaintiffs to pay separate premiums of which they could only recover under the policy for the motorcycle.
 "36. Plaintiff states that Defendants State Farm and Agent Whitfield breached their duty of good faith and fair dealing. Plaintiff further states that imposing premiums for uninsured/underinsured motorist coverage Defendants had no intention of providing was a breach of said duty of good faith and fair dealing."
To the extent that the Cornetts are alleging that they received no benefit from the multiple uninsured/underinsured motorist coverages, we agree with State Farm that the Cornetts did, in fact, receive separate and distinct benefits from each policy. Each policy provided uninsured/underinsured motorist coverage for injuries sustained by the Cornetts while occupying the vehicle that was the subject of that particular policy, and they would not otherwise have been covered for injuries sustained while occupying that vehicle, notwithstanding the existence of the other policies.
In this claim for relief, the Cornetts also claim that state Farm and Whitfield had a duty to inform them "that under Ohio Law, [they] cannot stack insurance policies." Presumably, the Cornetts are referring to R.C. 3937.18(G), which authorizes anti-stacking provisions. This law does not, however, preclude stacking. Insurance companies are free to offer policies that provide stacked coverages. The fact that the uninsured/underinsured motorist coverage in the Cornetts' policies are not stacked does not result from the statute, but from the policies themselves, which contain anti-stacking provisions. Because these are clearly set forth in the policies of insurance, we see no obligation on the part of State Farm to inform the Cornetts that these anti-stacking provisions are expressly permitted by law.
In support of their argument, the Cornetts cite Martin v. Grange HallIns. Co., supra. That case, however, involved a situation arising out of the law preceding the enactment of R.C. 3937.18(J)(1), authorizing other-owned vehicle exclusions from uninsured/underinsured motorist coverage contracts. Before enactment of that provision, other-owned vehicle exclusions had been invalidated pursuant to Martin v. MidwesternGroup Ins. Co. (1994), 70 Ohio St.3d 478. Thus, in Martin v. GrangeMut. Ins,. Co., supra, the other-owned vehicle exclusion in the policy was invalid, so that the plaintiffs in that case were, in fact, deriving no additional benefit from premiums paid for uninsured/underinsured motorist coverage in policies beyond the first policy of automobile insurance they purchased. Under these circumstances, the court concluded that there might be an issue of material fact, based upon prior dealings between the insurance company and the insureds, which might have given rise to an obligation, on the part of the insurance company, to have informed the plaintiffs in that case that they were paying premiums without any corresponding benefit.
By contrast, in the case before us, because the policies were purchased after the effective date of R.C. 3937.18(J)(1), the Cornetts received separate benefits from each of the uninsured/underinsured motorist coverages that they purchased.
We conclude that the trial court did not err in rendering summary judgment with respect to the Cornetts' Third Claim for Relief.
In their Fourth Claim for Relief, denominated "Unjust Enrichment," the Cornetts allege, at paragraph thirty-nine, "that paying separate insurance premiums for uninsured/underinsured coverage, which defendant State Farm had no intention of providing, unjustly enriched defendant State Farm."
This claim for relief depends, also, upon the invalid premise that the Cornetts received nothing of value for their multiple premiums. However, because of the other-owned vehicles exclusion, the Cornetts received separate uninsured/underinsured motorist coverages as a result of each premium paid. Therefore, the trial court did not err in rendering summary judgment with respect to their Fourth Claim for Relief.
The Cornetts' Second Claim for Relief is denominated "Fraud." This claim for relief appears to be concerned with the anti-stacking provision in the policy. Two of the paragraphs in this claim for relief allege misrepresentation. The first of these is paragraph twenty-seven, which is as follows:
 "27. Plaintiff further states that due to the language and emphasis in the insurance policies, the insurer intentionally created in the minds of the Plaintiffs, the idea that paying a separate premium on the insurance policies would allow them to recover under each policy."
The Cornetts do not elaborate and we find nothing in the policies that would support this assertion. To the contrary, each policy contains an anti-stacking provision.
The other paragraph in the Cornetts' Second Claim for Relief, is the following:
 "30. Plaintiffs further states [sic] that the intent of the parties, which was misrepresented to them by Defendant, Agent Whitfield, was that Plaintiffs would ultimately be able to recover under the separate insurance policies because they were made to pay separate premiums on said policies. Plaintiff, Barbara Cornett, further states that Plaintiffs relied on said misrepresentation to their disadvantage."
In this paragraph, the Cornetts assert that Whitfield, State Farm's agent, misrepresented to them that they would "be able to recover under the separate insurance policies." A pleading is to be construed liberally to serve the substantive merits of the action. McDonald v.Bernard (1982), 1 Ohio St.3d 85, fn. 1. Although somewhat inartfully stated, the implication in paragraph 30 is that Whitfield told the Cornetts that they would obtain multiple coverages, notwithstanding the existence of the anti-stacking provisions. State Farm and Whitfield have not rebutted this allegation with any averments or other evidentiary material consistent with Civ.R. 56.
Because the concepts of stacking and anti-stacking of insurance coverages are esoteric, we conclude that a consumer might reasonably rely upon a representation, by an insurer's agent, that uninsured/underinsured motorist coverages in multiple policies of automobile insurance will be cumulative that is, that the consumer may obtain benefits under more than one policy even though there are anti-stacking provisions in each policy. When an insurance agent knows that the customer is relying upon his expertise, the agent may have a duty to exercise reasonable care in advising the customer. Stuart v. National Indemnity Co. (1982),7 Ohio App.3d 63; Roberts v. State Farm Mut. Automobile Ins. Co. (January 7, 1982), Cuyahoga App. No. 43388; and First Catholic Slovak Union of theUnited States and Canada v. Buckeye Union Ins. Co. (1986),27 Ohio App.3d 169, at 170.
We conclude that the trial court erred when it rendered summary judgment with respect to the Cornetts' Second Claim for Relief, because State Farm has failed to demonstrate that there is no genuine issue of material fact with respect to the Cornetts' claim that Whitfield misrepresented to them that they would have the benefit of multiple uninsured/underinsured motor vehicle coverages, notwithstanding the existence of the anti-stacking provisions in the policies. Consequently, the trial court also erred when it rendered summary judgment with respect to the Cornetts' Fifth Claim for Relief their claim for punitive damages which is derivative of the fraud claim.
The Cornetts' Second Assignment of Error is sustained in part and overruled in part.
 IV
The Cornetts' First Assignment of Error having been overruled, and their Second Assignment of Error having been sustained in part and overruled in part, that part of the judgment of the trial court rendered in favor of State Farm and Whitfield on the Cornetts' Second and Fifth Claims for Relief is reversed, the judgment of the trial court is affirmed in all other respects, and this cause is remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and GRADY, J., concur.