**MARTIN et al., Appellants,**

v.

**GRANGE MUTUAL INSURANCE COMPANY, Appellee.**

[Cite as *Martin v. Grange Mut. Ins. Co.* (2001), 143 Ohio App.3d 332.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 99–G–2255.

Decided March 19, 2001.

**334**

*Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, Patrick T. Murphy* and *Amy Trejbal; Hanna, Campbell & Powell, Donald A. Powell* and *Robert L. Tucker,* for appellee.

*Finelli & Margolis, P.L.L.,* and *Ronald Margolis,* for appellants.

CHRISTLEY, Judge.

Appellants, Gerald and Barbara Martin, for themselves and on behalf of all others similarly situated, appeal from a final judgment of the Geauga County Court of Common Pleas granting appellee, Grange Mutual Insurance Company,

summary judgment. For the reasons that follow, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

On May 12, 1998, appellants filed a complaint against appellee challenging certain practices with regard to uninsured/underinsured motorist coverage. The action was predicated on the Supreme Court of Ohio's decision in *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, which had invalidated the "other owned vehicle" exclusion contained in virtually every automobile insurance policy issued in Ohio.[1]

In their complaint, appellants claimed that after *Martin,* only one vehicle in a household needed to have uninsured/underinsured coverage in order to provide such protection to all resident relatives living in the household. However, they alleged that appellee had continued to collect premiums for uninsured/underinsured coverage that was of no value and/or conferred no additional benefit and/or coverage to the company's policyholders, and that appellee had misled policyholders by failing to inform them of the *Martin* decision and its aftereffects.

Based on these allegations, appellants submitted the following seven claims for relief: (1) breach of contract; (2) breach of fiduciary duty; (3) misrepresentation and fraud predicated on a failure to disclose; (4) negligence; (5) conversion; (6) unjust enrichment; and (7) declaratory relief with respect to their rights, liabilities, and obligations under the insurance contract.

On May 21, 1998, appellants amended their complaint to have the case certified as a class action pursuant to Civ.R. 23 to include all of appellee's policyholders in Ohio that had paid multiple premiums for uninsured/underinsured coverage subsequent to October 5, 1994, the date *Martin* was decided. Appellees filed an answer on June 22, 1998, denying the allegations contained in the complaint.

Shortly thereafter, on June 26, 1998, appellee filed a motion for summary judgment arguing the following: (1) *Martin* did not prohibit insurance companies from charging premiums for uninsured/underinsured coverage based on the

---

1. Prior to 1994, insurance companies in Ohio included in their automobile liability insurance policies a provision that excluded coverage for bodily injury to a person occupying or struck by a vehicle owned by the insured but not named in the policy. In *Martin,* however, the Supreme Court of Ohio concluded that uninsured motorist coverage was designed to protect persons, not vehicles. *Martin* at paragraph one of the syllabus. As a result, the court held that "[a]n automobile insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is therefore invalid." *Martin* at paragraph three of the syllabus. Subsequent to *Martin,* the General Assembly amended R.C. 3937.18 to specifically permit "other owned vehicle" exclusions effective September 13, 1997. Thus, the relevant period of time for purposes of appellant's complaint is October 5, 1994 to September 3, 1997.

number of vehicles owned by an insured; (2) there is an increased risk and increased coverage associated with including uninsured/underinsured coverage on subsequent vehicles owned by an insured; and (3) *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, implicitly approved charging multiple premiums for multiple policies containing uninsured/underinsured coverage to family members living in the same household.

In support of its motion for summary judgment, appellee produced the affidavit of Ray Niswander ("Niswander"), the director of pricing and actuarial services for the company. Niswander explained the method by which appellee determined the cost of uninsured/underinsured coverage, in addition to the way the company allocated the costs among its policyholders. Niswander stated that these rates were filed with the Ohio Department of Insurance and that they had never been challenged or disapproved.

Pursuant to Civ.R. 26(C), appellees moved the trial court to stay discovery until its motion for summary judgment was ruled upon. In a judgment entry dated July 2, 1998, the trial court partially granted appellee's request, limiting discovery to those issues necessary to respond to appellee's motion for summary judgment.

On July 18, 1998, appellants filed a motion pursuant to Sup.R. 42 to have the case designated as complex litigation. The trial court granted the motion on August 26, 1998.

Appellants then filed a motion in opposition to summary judgment on November 10, 1998. They opened by clarifying their position that they were not challenging the rate structure used by appellee. Rather, they submitted that while it was not illegal for appellee to charge multiple premiums per vehicle for uninsured/underinsured coverage, appellee "breached a duty or committed misrepresentation with respect to how it provided and represented multiple, simultaneously effective [policies] to its insureds by creating the misimpression that the coverage had such value to them, when in fact it did not." Accordingly, appellants argued that appellee's summary judgment motion should be denied because the company had not provided any evidence to refute the claims actually asserted in their complaint.

On October 12, 1999, the trial court issued a decision granting appellee summary judgment on all claims. The trial court began by giving a brief synopsis of each party's position. However, the court then rejected appellants' argument that the case was about the misrepresentation of uninsured/underinsured coverage, and instead found, among other things, that appellants were indeed contesting the premiums charged by appellee. Based on this assumption, the trial court concluded the following:

"This Court is unwilling to say that as a matter of law, [appellee] had a duty to inform its insured that as a result of the *Martin* decision, policy holders might have wished to drop uninsured/underinsured motorist coverage for all but one of their vehicles. This Court is unwilling to say that as a matter of law, [appellee's] failure to so inform its policy holders and [appellee's] continuation of charging additional premiums for each vehicle listed constituted breach of contract, breach of fiduciary duty, misrepresentation and fraud, negligence, or conversion. This Court is unwilling to say that as a matter of law [appellants] have stated a cause of action upon which relief may be granted."

From this judgment entry, appellants filed a timely notice of appeal. They now assert the following single assignment of error for our review:

"The trial court erred in granting summary judgment to Grange when the record presents genuine issues of material fact which are in dispute."

At the outset, we note that summary judgment is proper when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068, 1070–1071.

Material facts are those facts that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Turner* at 340, 617 N.E.2d at 1126.

The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. *Id.* at 293, 662 N.E.2d at 273–274.

If the moving party fails to satisfy this initial burden, summary judgment should be denied. *Id.* However, if this initial burden is met, the nonmoving party

has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. *Id.* If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. *Id.*

According to appellants, summary judgment was inappropriate because the trial court improperly dismissed their entire complaint on the basis of an alleged deficiency in only one claim. Appellants believe that even if the court was correct in holding that appellee did not have an obligation, as a matter of law, to inform policyholders of *Martin,* the court went too far in finding that there was no genuine issue as to any material fact with respect to the other asserted claims.

In contrast, appellee argues that summary judgment was appropriate because appellants' primary allegation—that appellee had a duty to inform its insureds of *Martin* and that the company breached that duty by failing to do so—was applicable to every legal theory upon which appellants sought relief. Thus, appellee maintains that because the question of whether a duty exits is legal in nature, there were no genuine issues of material fact in the case.

Appellants, however, claim that appellee continued to charge its policyholders premiums for uninsured/underinsured coverage on multiple vehicles even after *Martin* found such provisions unnecessary. While they concede that it was not illegal for appellee to charge multiple premiums per vehicle for uninsured/underinsured coverage, appellants believe that the company deceptively misled policyholders by representing that the additional premiums were payments for uninsured/underinsured coverage when in fact the payments were for what they classify as "optional guest coverage."

First, we agree with the trial court that appellee did not have a *legal* duty to notify appellants of *Martin* and the corresponding effect of the decision on their insurance policies. Although the relationship between an insurance company and its policyholders is comparable to that of a fiduciary, *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 699, 590 N.E.2d 1228, 1235–1236, overruled in part on other grounds, *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus, we can find no authority to support the assertion that, as a matter of law, an insurance company is obligated to keep its insureds informed on the current status of the law as it relates to uninsured/underinsured coverage. *Stefanov v. Grange Mut. Cas. Co.* (Aug. 21, 1997), Cuyahoga App. No. 71209, unreported, at 18–19, 1997 WL 476829.

In rejecting a similar argument, the court in *Walter v. Allstate Ins. Co.* (Apr. 10, 1997), Richland App. No. 96–CA–84, unreported, at 6, 1997 WL 219229, held that the special relationship between an insurance company and its policyholders

"does not require an insurer to notify the insured of the current legal interpretation of its policy provisions." In doing so, the court aptly noted the following:

"Insurance law is typically in a state of flux, as cases proceed through the courts. Policy provisions are often subjected to differing interpretations by different courts throughout the state, pending ultimate review by the Supreme Court." *Id.*

We find the reasoning in *Walter* to be persuasive. As a result, absent any precedent to the contrary, this court is reluctant to place such an onerous burden on an insurance company. Thus, we hold that an insurer, as a matter of law, is not required to advise all of its insureds of every change in insurance law.

Having said that, however, we wish to qualify our previous pronouncement by stating that even though an insurance company does not have a legal obligation to keep policyholders informed, circumstances may occur whereby an insurer obligates itself through prior conduct. In other words, if an insurance company has taken steps in the past to notify insureds of changes in the law bearing on coverage or some other term of a policy, the company may then be required to instruct policyholders on further reforms.

The determination of whether an insurance company has obligated itself to inform an insured of changes affecting his or her policy is obviously fact-dependent. A policyholder arguing that an insurer has violated this duty would clearly have to provide evidence that not only did the company fail to do so this time, but also that it was the insurer's practice in the past to provide this information.

Here, the trial court never considered appellee's prior actions with respect to notifying its insureds. Indeed, by limiting discovery to those issues raised in appellee's motion for summary judgment, the parties never had the opportunity to develop the factual foundation upon which such a summary judgment exercise could be predicated.

As we noted earlier, in a summary judgment exercise, the moving party has the burden of informing the trial court of the basis for the motion and of identifying those portions of the record that show the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher, supra.* More important, if the moving party fails to satisfy this initial burden, summary judgment should be *denied. Id.*

Because appellee failed to fully address appellants' claims with respect to breach of contract, breach of fiduciary duty, misrepresentation and fraud predicated on a failure to disclose, negligence, conversion, and unjust enrichment, the company did not sustain its burden of demonstrating a lack of genuine issue of

material fact. *DeRubba v. McMillan* (July 5, 1991), Trumbull App. No. 90–T–4471, unreported, at 4–5, 1991 WL 123067; *Besednik v. Allstate Ins. Co.* (Mar. 11, 1988), Lake App. No. 12–010, unreported, 1988 WL 32963. Therefore, it was not appropriate for the trial court to grant appellee summary judgment on appellants' entire complaint.

The situation currently before this court is analogous to that in *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 727 N.E.2d 1265, wherein the Supreme Court of Ohio upheld class certification in a case strikingly similar to the present matter. In *Baughman,* the plaintiffs, who all lived in the same household but had separate insurance polices issued by State Farm, filed a complaint against State Farm after learning that the coverage limits of the policies could not be stacked. Under each policy, a separate premium was imposed for uninsured/underinsured coverage, and each policy contained an "other owned vehicle" exclusion. Like appellee here, it was undisputed that State Farm had never informed the plaintiffs of *Martin* or the invalidity of the above exclusions.

As a result of these allegations, the plaintiffs in *Baughman* presented six claims for relief, including fraud, conversion, unjust enrichment, negligence, breach of implied covenant or duty of good faith and fair dealing, and the return of insurance premiums based on a failure to disclose. Based on the number of people that were potentially affected by the lawsuit, plaintiffs moved for class certification pursuant to Civ.R. 23. After holding a hearing, the trial court granted the motion.

On appeal, State Farm argued that the trial court's findings with respect to certification constituted an abuse of discretion. The court of appeals agreed, concluding that the plaintiffs would not be able to fairly and adequately protect the interests of the putative class members.

The Supreme Court reversed the court of appeals and remanded the matter to the trial court for further proceedings. In doing so, the court noted the following:

"In this case, appellants allege that State Farm wrongfully charged them separate premiums for uninsured/underinsured motorist coverage on each of their vehicles without disclosing that only one vehicle in the household need have uninsured/underinsured motorist coverage in order to provide such protection to all resident relatives, regardless of which vehicle they may be occupying when injured. * * * In attempting to establish liability, it appears that appellants will introduce evidence showing State Farm's *past practice of informing its insureds of changes in the law bearing on coverage or policy terms,* particularly those wrought by judicial decision that affected other-owned-vehicle exclusions, its failure to inform of *Martin* or the invalidity of the other-owned-vehicle exclusion,

and the presence of the integration clause in their policies." (Emphasis added.) *Baughman* at 488, 727 N.E.2d at 1273.

Additionally, when discussing whether the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," Civ.R. 23(B)(3), the court observed that "* * * if appellants can establish by common proof and/or form documents that State Farm misrepresented the validity of the other-owned-vehicle exclusion, or that State Farm was required and failed to disclose the effect of *Martin,* * * * a presumption of reliance would arise as to the entire class, thereby obviating the necessity for individual proof on the issue." *Baughman* at 491, 727 N.E.2d at 1275–1276.

As we noted earlier, *Baughman,* concerned only class certification. Nevertheless, the Supreme Court, although not ruling on the validity of the plaintiffs' particular claims, at least implicitly acknowledged that such claims may have merit.

Appellee, however, argues that summary judgment was appropriate because appellants' primary allegation—that appellee had a duty to inform its insureds of *Martin* and that the company breached that duty by failing to do so—was applicable to every legal theory upon which appellants sought relief. In support, the company cites three decisions that have upheld the granting of summary judgment in what appellee considers to be similar situations.

After carefully reviewing the decisions, it is readily apparent that all three decisions are distinguishable from the instant matter. In those cases, the plaintiffs filed complaints in which they claimed that, based on *Martin,* it was illegal for insurers to charge multiple premiums for uninsured/underinsured coverage. They contended that by charging their premium on a per-vehicle basis, the insurance companies were actually imposing an additional premium without assuming any additional risks.

In each case, the trial court granted the insurer summary judgment. On appeal, these decisions were affirmed, primarily on the basis that *Martin* did not hold that every insurance policy that contained an "other owned vehicle" exclusion was illegal. Rather, *Martin* merely held that those particular provisions were unenforceable. Thus, they reasoned that the fact that "other owned vehicle" exclusions were unenforceable did not necessarily mean that every insured who paid uninsured/underinsured coverage on more than one vehicle overpaid. See *Jefferys v. State Farm Mut. Auto. Ins. Co.* (Oct. 28, 1996), Stark App. No. 1996CA00048, unreported, 1996 WL 752882; *Fairhurst v. Owners Ins. Co.* (Apr. 3, 1996), Summit App. No. 17402, unreported, 1996 WL 148623; *Devall v. Erie Ins. Group* (Jan. 24, 1996), Summit App. No. 17300, unreported, 1996 WL 27925.

Unlike *Jefferys, Fairhurst,* and *Devall,* appellants are not strictly seeking the return of "overpaid" premiums. Rather, they are claiming that appellee actively misled them into paying for coverage that was no longer necessary. Therefore, the case at bar is certainly more analogous to *Baughman* as opposed to *Jefferys, Fairhurst,* or *Devall.*

In light of the foregoing analysis, appellants' sole assignment of error has merit to the extent indicated. The judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court is first instructed to consider issues of past practice, etc. Then, the court is to reconsider appellants' claims, individually, in light of that finding, as well as any evidence which may be subsequently introduced during the discovery process.

*Judgment accordingly.*

WILLIAM M. O'NEILL, P.J., and NADER, J., concur.