DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Delmas Baughman, et al., appeal from the judgment of the Summit County Court of Common Pleas which granted summary judgment in favor of Appellee, State Farm Mutual Automobile Insurance Co. This Court affirms in part and reverses in part.
 I. {¶ 2} This case arises from Appellee's, State Farm Mutual Automobile Insurance Co. ("State Farm"), provision and marketing of uninsured/underinsured motorist ("UM/UIM") coverage to policyholders in multi-vehicle households after the Ohio Supreme Court released its opinion in Martin v. Midwestern Group Ins.Co. (1994), 70 Ohio St.3d 478. In Martin, the Ohio Supreme Court held that when UM/UIM coverage arises under R.C. 3937.18, a policy exclusion which requires that the insured be operating a specific vehicle identified in the policy, i.e. an "other owned vehicle exclusion", is invalid. Under Martin, an insured is entitled to UM/UIM coverage under a policy even if the insured was not in an insured vehicle at the time of the accident, so long as one family member in the insured's household purchased UM/UIM coverage. Consequently, upon the pronouncement ofMartin, a policyholder in a multi-vehicle household could cancel all but one UM/UIM policy and still retain full UM/UIM coverage for all members of the household. The only benefit of maintaining more than one UM/UIM policy (or carrying UM/UIM coverage for each insured vehicle) after Martin is that any additional UM/UIM policies would cover guest passengers riding in a vehicle where UM/UIM coverage was specifically purchased.
 {¶ 3} This action was brought on behalf of all State Farm's policyholders in Ohio who, between October 5, 1994 and September 3, 1997,[1] had more than one household vehicle insured by State Farm on which UM/UIM coverage was simultaneously applicable and for which multiple premiums had been paid. All of Appellants' claims arise from State Farm's failure to disclose the Martin
decision to its policyholders. The action filed below alleges that, as a result of the Supreme Court's decision in Martin,
State Farm's policyholders who purchased UM/UIM coverage on more than one vehicle were no longer receiving the same benefit they received prior to Martin. Appellants contend that State Farm had a duty to disclose this information to its policyholders. Moreover, Appellants assert that State Farm consciously chose not to inform policyholders of this change because such notification would cause a large number of policyholders to cancel their additional UM/UIM coverage which would adversely impact State Farm's profits.
 {¶ 4} Appellants filed their original complaint on August 28, 1995 and amended the complaint several times.[2] The most recent complaint, filed on November 20, 2001, alleged claims of fraud, constructive fraud, unjust enrichment, negligence and breach of assumed duty to disclose and sought reimbursement of insurance premiums. On January 24, 2003, State Farm filed a motion for summary judgment on all of Appellants' claims, essentially alleging that they had no legal duty to apprise Appellants of the Martin decision and that Appellants' claims thus fail as a matter of law. Appellants were granted a Civ. R. 56(F) extension of time to prepare their brief in opposition, which they filed on September 19, 2003. State Farm filed its reply brief on October 10, 2003 and Appellants filed their surreply on October 20, 2003. On June 18, 2004, the trial court entered its judgment, granting State Farm's summary judgment motion in its entirety.
 {¶ 5} Appellants timely filed a notice of appeal on July 16, 2004 and have raised three assignments of error for our review. On May 2, 2005, we stayed Appellants' appeal pending the trial court's resolution of an issue regarding documents filed under seal. Upon the trial court's resolution of these issues, we lifted the stay and resumed the appeal on September 12, 2005.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO [STATE FARM] ON [APPELLANTS'] CONSTRUCTIVE FRAUD CLAIM."
 {¶ 6} In their first assignment of error, Appellants allege that the trial court erred in granting summary judgment to State Farm on Appellants' constructive fraud claim. We agree.
 {¶ 7} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948.
 {¶ 8} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 10} The two named Plaintiffs in this class action, Rosemarie DiPalma and Gary Heiland, are the only representatives of the certified class. As class representatives, DiPalma and Heiland have the burden of proving the claims asserted on behalf of the class. State Farm contends that because DiPalma and Heiland's claims fail, the class action plaintiffs' claims also fail. See Young v. Klausner Cooperage Co. (1956),164 Ohio St. 489, 491 (if the class representatives' claims fail, the claims of all those plaintiffs he or she represents will also fail).
 {¶ 11} In support of its motion for summary judgment, State Farm relied on depositions of the named plaintiffs. State Farm cited the named plaintiffs' testimony to demonstrate that they had not relied on State Farm's prior communications in making their purchasing decisions. Appellants filed several documents in support of their brief in opposition, including depositions of State Farm executives and affidavits from Heiland and DiPalma.
 {¶ 12} Appellants have alleged claims for both actual and constructive fraud. An action for actual fraud is based on an affirmative misrepresentation whereas an action for constructive fraud results from the "failure to disclose facts of a material nature where there exists a duty to speak." Layman v. Binns
(1988), 35 Ohio St.3d 176, 178. The Ohio Supreme Court has identified the elements of fraud as: (1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167,169.
 {¶ 13} In Appellants' constructive fraud claim they allege that State Farm's failure to disclose Martin amounts to fraud and/or misrepresentation and that they should be held accountable for this inaction. Appellants allege that State Farm had a duty to speak because State Farm had entered into a fiduciary or defacto confidential relationship with its policyholders. State Farm does not dispute that it did not apprise its policyholders of the Martin decision but rather contends that it had no legal duty to disclose this decision and that consequently, Appellants' claims fail as a matter of law.
 {¶ 14} The trial court, relying on Martin v. Grange Mut.Ins. Co. (2001), 143 Ohio App.3d 332 ("Grange"), held that State Farm had no legal duty to notify its policyholders of theMartin decision. Grange is a factually similar case wherein the plaintiffs alleged that Grange Mutual Insurance Company misled their policyholders by failing to inform them of theMartin decision. Grange, 143 Ohio App.3d 335. As in this case, the Grange plaintiffs sought recovery of premiums they paid for UM/UIM coverage that was of little to no value and/or conferred no additional benefit to the policyholders. Id.
 {¶ 15} In Grange, the trial court granted summary judgment for the insurance company on the plaintiff's claims for (1) breach of contract, (2) breach of fiduciary duty, (3) misrepresentation and fraud based on a failure to disclose, (4) negligence, (5) conversion, (6) unjust enrichment and (7) declaratory relief with respect to their rights, liabilities, and obligations under the insurance contract, finding that Grange had no duty to disclose the Martin decision to its policyholders. Id. at 336. The court of appeals agreed with the finding that Grange had no legal duty to disclose the decision. Id. at 338.
 {¶ 16} However, the Grange appeals court reversed summary judgment on several claims including the fraud claim, finding that the appellee had "failed to fully address the appellants' claims with respect to breach of contract, breach of fiduciary duty, misrepresentation and fraud predicated on a failure todisclose, negligence, conversion, and unjust enrichment" and had failed to "sustain its burden of demonstrating a lack of genuine issue of material fact." [Emphasis added]. Id. at 339-340. We find the following reasoning particularly relevant:
"[W]e hold that an insurer, as a matter of law, is not required to advise all of its insureds of every change in insurance law.
"Having said that, however, we wish to qualify our previous pronouncement by stating that even though an insurance company does not have a legal obligation to keep policyholders informed,circumstances may occur whereby an insurer obligates itselfthrough prior conduct. In other words, if an insurance companyhas taken steps in the past to notify insureds of changes in thelaw bearing on coverage or some other term of a policy, thecompany may then be required to instruct policyholders on furtherreforms.
"The determination of whether an insurance company has obligated itself to inform an insured of changes affecting his or her policy is obviously fact-dependent. A policyholder arguing that an insurer has violated this duty would clearly have to provide evidence that not only did the company fail to do so this time, but also that it was the insurer's practice in the past to provide this information." [Emphasis added]. Id. at 339.
The Grange court's finding that the insurer owed no legal duty to notify its insureds of Martin must, therefore, be read in conjunction with its reversal of summary judgment on the fraud claim and its instruction that, on remand, the trial court should "consider issues of past practice." Id. at 342.
 {¶ 17} In its discussion of the Grange case, the trial court below did not address this portion of the holding. The trial court considered only whether State Farm had a legal duty or had assumed a duty to disclose the Martin decision. We find that the trial court erred in failing to consider that an insurance company may obligate itself to notify its policyholders of decisions such as Martin that impact insurance purchasing decisions by entering into a fiduciary or similar relationship with its policyholders.
 {¶ 18} While we find that the existence of a legal duty is a question of law for the court, the existence of a fiduciary duty or similar relationship is a factual question for the trier of fact. Clark v. BP Oil Co., 9th Dist. No. 21398, 2003-Ohio-3917, at ¶ 8; Cope v. Metropolitan Life Ins. Co. (1998),82 Ohio St.3d 426, 437. The Grange court specifically found that "[t]he determination of whether an insurance company has obligated itself to inform an insured of changes affecting his or her policy is obviously fact-dependent." Grange,143 Ohio App.3d at 339.
 {¶ 19} "[A] duty to disclose arises primarily in a situation involving a fiduciary or other similar relationship of trust and confidence." Federated Mgt. Co. v. Coopers Lybrand (2000),137 Ohio App.3d 366, 384. Courts have defined a fiduciary relationship as one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Id. citing Ed Schory Sons, Inc.v. Soc. Natl. Bank (1996), 75 Ohio St.3d 433, 442,662 N.E.2d 1074, 1081-1082. "The duty to speak does not necessarily depend on the existence of a fiduciary relationship. It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." (Internal citations omitted). Starinki v. Pace
(1987), 41 Ohio App.3d 200, 203.
 {¶ 20} We find further support for our disposition of this issue in Cope. Cope, 82 Ohio St.3d 426. In Cope, the Ohio Supreme Court held that a group of insureds met the requirement for class certification in their fraud action against Metropolitan Life Insurance Company ("Met Life") for intentionally omitting mandatory disclosures in their sales of replacement insurance as new insurance. Id. at 437. According to the Court, "[i]f the jury finds that a reasonable person under these circumstances would repose special confidence and trust in MetLife to disclose material information, it may infer the existence of a fiduciary duty across the entire class." Id. citing Logsdon v. Natl. City Bank (1991), 62 Ohio Misc.2d 449,460-61 (finding that action is maintainable as class action and that a fiduciary duty arises from a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust" (internal citations omitted.)).
 {¶ 21} Under this guidance, we find that a factual issue remains regarding the existence of a fiduciary or other relationship between the parties that would give rise to a duty to disclose the Martin decision. Construing the evidence in the light most favorable to Appellants, as we must with a motion for summary judgment, we find the record replete with evidence that State Farm works diligently to develop relationships whereby its clients place trust and confidence in their agents to inform them of information that impacts their coverage. See Viock,13 Ohio App.3d at 12. State Farm's business procedures clearly emphasize the creation of a "good neighbor" relationship with insureds and "trust" is a central theme of its business plan. We are persuaded by evidence that State Farm markets itself as a trustworthy insurance agency upon which customers can rely to help them make the best decisions regarding their insurance policies. Moreover, State Farm instructs its agents to develop long-term trusting relationships with their policyholders and informs agents that they can develop these relationships through honesty, integrity and by looking out for their client's best interest. Evidence that State Farm has advised their agents to "place their clients' interests ahead of their own" further underscores this conclusion.
 {¶ 22} State Farm executives testified that the company distinguishes itself from competitors through its unique agent-policyholder relationship. Unlike its competitors, State Farm's marketing process involves using their "agents as a conduit through verbal communication" instead of written communication. State Farm executives explained that the company has continued using this marketing process because of the high value of the agents' relationships with their insureds.
 {¶ 23} The record also contains evidence that State Farm viewed itself as occupying an advisor type relationship with its customers, as opposed to a debtor-creditor relationship. SeeLogsdon, 62 Ohio Misc.2d at 460-61 (holding that "[a] mere debtor-creditor relationship without more does not create a fiduciary relationship"). State Farm's history of disclosing important information to their policyholders such as changes in the law and changes in coverage further demonstrates the advisory nature of its relationship with clients.
 {¶ 24} State Farm executives also admitted that State Farm's knowledge of the legislature's actions and their impact on insurance law was far superior to that of its policyholders. Correspondence amongst State Farm executives regarding theMartin decision demonstrates that State Farm knew that it had superior knowledge and therefore a greater duty to inform its insureds of changes in the law, specifically Martin, that impact their purchasing decisions.
 {¶ 25} While we do not depart from the precedent that absolves insurance companies of the legal obligation to advise insureds of every change in insurance law, we adopt the Grange
court's reasoning and find that insurance companies may, through their past practices, obligate themselves to disclose changes in the law. Grange, 143 Ohio App.3d at 339. State Farm has purposefully sought to set itself apart as the most trustworthy insurance company — the one that treats its customers as neighbors. After years of profiting from this marketing strategy, State Farm cannot disavow this attribute when it is financially advantageous. We sustain Appellants' first assignment of error.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO [STATE FARM] ON [APPELLANTS'] ACTIVE FRAUD CLAIM."
 {¶ 26} In their second assignment of error, Appellants allege that the trial court erred in granting summary judgment to State Farm on Appellants' active fraud claim. We agree.
 {¶ 27} Appellants' active fraud claim is predicated on the theory that State Farm's renewal notices were misleading and contained misrepresentations upon which they relied in their purchasing decisions. The trial court found that Appellants' active fraud claim failed because they had not identified a specific fact that was misrepresented in State Farm's renewal statements and declaration pages and further failed to establish justifiable reliance.
Misrepresentation
 {¶ 28} Given our determination that a genuine issue of material fact remains regarding the duty to disclose elements of a fraud claim, we need not reexamine that element. We will therefore first examine whether Appellants identified a fact that was misrepresented. Appellants claim that the policy renewal notices State Farm sent out after Martin were misleading because they refer to UM/UIM coverage purchased on vehicles #2, 3, 4, etc. in the same manner as they refer to the same coverage on vehicle #1. Appellants assert that these statements are misrepresentations because, after Martin, coverage on vehicles #2, 3, 4, etc. is merely "Guest UM Coverage", yet nothing in the renewal notice apprises the policyholder of this fact.
 {¶ 29} State Farm contends that Appellants have failed to identify an actual misrepresentation of fact in the renewal notice itself. Accordingly, they assert that Appellants have not sustained their burden of identifying an affirmative misrepresentation. State Farm argues that Appellants have admitted that the renewal policy did not contain a false statement when they acknowledged that UM/UIM coverage on more than one household vehicle has "some value" after Martin.
 {¶ 30} We are mindful that conduct, such as "an assertion not in accordance with the truth" may amount to a misrepresentation for fraud purposes. Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42,49 citing 3 Restatement of the Law 2d, Torts (1965), Section 525, Comment b. Under this guidance, we find State Farm's argument regarding the value of UM/UIM coverage after Martin
unpersuasive. Although such coverage arguably had some value after Martin, it is indisputable that this value was not the same as pre-Martin when a policyholder needed UM/UIM coverage on all vehicles in order to retain full UM/UIM coverage for all members of the household. The only benefit of maintaining more than one UM/UIM policy (or carrying UM/UIM coverage for each insured vehicle) after Martin is that any additional UM/UIM policies would cover guest passengers riding in a vehicle where UM/UIM coverage was specifically purchased. Both class representatives testified that they did not realize that UM/UIM coverage on vehicles #2, 3, 4, etc. was only for the financial benefit of guest passengers — who may have already had such coverage. We find Heiland's testimony particularly compelling:
Q. "Did State Farm ever give you false or misleading information?
A. "Well, they didn't let me know in my terms where I could, when I had the three vehicles or four, I could have had uninsured motorist on one and it would have been covered on all of them, instead of paying the premiums for all three or four. If I would have known I had that choice, yeah, I would have dropped that, because I'm looking for a good deal. What should I pay for something I already have?"
Q. "And when was your recollection or when do [SIC] you understand that that false or misleading information was given?
A. "Just until recently. If I had known back then, it would have been a different story."
 {¶ 31} State Farm employees admitted that State Farm stood to lose significant profits if and when policyholders learned ofMartin's effect, i.e. that they did not have to maintain UM/UIM coverage on household vehicles other than vehicle #1. Because UM/UIM coverage clearly had a different value after Martin, we find that a genuine issue of material fact remains as to whether State Farm's act of referring to UM/UIM coverage after Martin
in the same manner as before Martin constitutes a material misrepresentation. Russ, 59 Ohio St.3d 42, 49.
Justifiable Reliance
 {¶ 32} State Farm contends that summary judgment was properly granted in their favor because Appellants failed to demonstrate a genuine issue of material fact with regard to the justifiable reliance element. In support of this contention, State Farm maintains that neither class representative established justifiable reliance through their deposition testimony and further contends that neither class representative's affidavit established justifiable reliance because the affidavits are "self-serving" and conflict with their deposition testimony.
 {¶ 33} First, we note that the trial court made no specific reference to the named plaintiffs' affidavits in its order granting summary judgment. Further, the trial court provided no explanation for its failure to consider the affidavits. Civ. R. 56(C) requires a trial court to "examine all appropriate materials filed by the parties before it when ruling on a motion for summary judgment." Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358. We find the trial court's failure to consider this evidence, without explanation, reversible error.
 {¶ 34} Even assuming that the trial court considered these affidavits, we nonetheless find a genuine issue of fact regarding the justifiable reliance element. Again, we note that the trial court must construe the evidence in the light most favorable to the nonmoving party. See Viock, 13 Ohio App.3d at 12. Heiland testified that he "usually read everything" he received from State Farm, examined the "auto renewal statement" to determine what coverages he had and he would contact his insurance agent if he "saw a discrepancy on his premiums[.]" Moreover, in his affidavit he testified:
"Affiant relied on the information contained in the auto renewal notices concerning the type of the insurance coverages he had purchased from State Farm. Based upon the renewal notices for the period from October 1994 through September 1997, it was never Affiant's understanding that `Coverage U' for household cars #2 and #3 was for the financial benefit of guest passengers only. Had Affiant understood that, he would not have purchased `Coverage U' on household cars #2 and #3. Instead, to make sure that guests were protected, he would have only driven them in household car #1, i.e., the household vehicle with `Coverage U.'"
 {¶ 35} DiPalma's affidavit contains substantially the same statement. In her affidavit, DiPalma also testified that if State Farm had apprised her of the effects of Martin, she would have cancelled her additional UM/UIM coverage. State Farm contends that DiPalma's affidavit conflicts with her deposition testimony in which she agreed that she was not relying on the papers State Farm sent her but, was instead relying on her State Farm agent to give her the right advice regarding her policy purchases. This testimony must be considered in conjunction with deposition testimony that she felt overwhelmed by the high volume of State Farm mailings she received, but would nonetheless read these documents. DiPalma also testified that she relied on her State Farm agent because she had difficulty comprehending the insurance policy and needed her agent to explain the policy "in simple language."
 {¶ 36} Upon review, we find that DiPalma's affidavit supplements her deposition testimony. In her deposition, she testified that she read or reviewed the documents sent to her by State Farm but relied on her State Farm agent to aid her in understanding what these documents meant. Read in the light most favorable to DiPalma, we find a genuine issue of material fact remains as to whether she relied on misrepresentations in her policy renewal notices.
 {¶ 37} The Ohio Supreme Court has held that "because summary judgment is a procedural device to terminate litigation, it must be awarded with caution. Doubts must be resolved in favor of the non-moving party." Murphy, 65 Ohio St.3d at 359. We therefore find that a genuine issue of material fact remains with regard to the misrepresentation and justifiable reliance elements of an active fraud claim, we sustain Appellants' second assignment of error.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE ASSUMED DUTY CLAIM."
 {¶ 38} In their third assignment of error, Appellants allege that the trial court erred in granting summary judgment to State Farm on Appellants' assumed duty claim. We disagree.
 {¶ 39} The trial court found that Appellants' assumed duty claim failed because (1) Appellants did not establish reliance on State Farm's assumed duty to disclose changes in the law, (2) Appellants' alleged failure to act in accordance with their assumed duty did not increase Appellants' risk of harm and (3) Appellants failed to assert physical injury. The trial court did not analyze whether State Farm had undertaken a duty to disclose changes in the law. Implicit in the trial court's finding, therefore, is the finding that State Farm assumed the duty to inform its policyholders of changes in the law that would impact their coverage and purchasing decisions.
 {¶ 40} Appellants claim that, by virtue of State Farm's past conduct, they assumed a duty to disclose significant changes in insurance law which impact their coverage and purchasing decisions. Appellants contend that State Farm breached its assumed duty when it failed to inform its policyholders of theMartin decision. Notably, neither party disputes that State Farm did not apprise its policyholders of the Martin decision even though it had previously notified policyholders of changes in the law. Nonetheless, State Farm contends that Appellants' claim fails as a matter of law on two essential elements of an assumed duty claim: physical injury and reliance. While we disagree with the court's analysis of the reliance issue, we agree that Appellants have failed to allege physical injury.
 {¶ 41} Under the assumed duty doctrine, "one who gratuitously undertakes a voluntary act assumes the duty to complete it with the exercise of due care under the circumstances." Seley v. G.D.Searle Co. (1981), 67 Ohio St.2d 192, 202, citing Briere v.Lathrop Co. (1970), 22 Ohio St.2d 166, 172. Although the Ohio Supreme Court has not expressly adopted the Restatement section from which it gleans the assumed duty doctrine definition, it cited this section with approval in both Seley andBriere.[3]
 {¶ 42} To recover for a breach of assumed duty claim, one must establish (1) reliance on an assumed duty or (2) an increased risk of harm, and (3) physical injury. See Seley,67 Ohio St.2d 192, 202; Rine v. Sabo (1996), 113 Ohio App.3d 109,118. To demonstrate that one has voluntarily assumed a duty, one must establish reliance on the undertaking. Power v. Boles
(1996), 110 Ohio App.3d 29, 34.
Assumption of Duty
 {¶ 43} We find no error in the trial court's implicit conclusion that State Farm assumed a duty to disclose changes in the law. The record was replete with testimony from State Farm executives that, when construed most favorably to Appellants, established that State Farm historically disclosed information to its policyholders regarding changes in premiums, changes in the law, coverage issues and safety issues. The record also contained evidence that State Farm had assumed an advisory role whereby its clients relied on State Farm agents to help them make informed purchasing decisions. We now examine whether (1) Appellants relied on this duty and if so, (2) suffered physical injury as a result of their reliance.
Reliance
 {¶ 44} As to the element of reliance, we find that the trial court failed to construe the evidence in a light most favorable to Appellants. The trial court focused on portions of testimony that negated reliance, ignoring testimony that demonstrated reliance. The trial court narrowly focused on whether Appellants had relied on "prior communications from State Farm about the other owned vehicle exclusion to make insurance purchase decisions." The court explained:
"The Plaintiffs contend that, since State Farm advised policyholders about the invalidity of the other owned vehicle exclusion in 1982, then State Farm voluntarily assumed a duty to tell policyholders about the Martin decision twelve (12) years later. However, the evidence establishes that only Plaintiff Heiland was a State Farm policyholder in 1982, at the time of that notice. * * * Thus, because he was the only policyholder in 1982, only Heiland has standing to assert reliance on the 1982 notice."
 {¶ 45} This statement reflects an unnecessarily restrictive standard for measuring reliance. The facts that Heiland did not understand the 1982 disclosure and that DiPalma was not a policyholder in 1982 are not dispositive of the reliance issue. The evidence reflects that Appellants read everything they received from State Farm and more importantly, relied on their agents to provide the information they required to make informed purchasing decisions.
 {¶ 46} Heiland testified that he had received prior notifications from State Farm regarding changes in the law. More importantly, Heiland testified that he generally read every document he received from State Farm to determine whether his premiums or coverage had changed.
Q. "What do you do when you get something from State Farm in the mail?
A."I usually read everything. I'm saying I don't understand everything, but I try to read everything. If everything corresponds with my premiums, I'm fine, I'm happy.
Q: "If you don't understand something you read, what would you do?
A."Well, like I said, if I don't see an increase in my premiums, I don't feel a need to go any further on things, unless it's the bold print or saying `Attention.' I'm just no different than anybody else."
And
Q. "What kind of documents would you receive from State Farm as a policyholder?
A. "* * *
"There's — I've got things on changes of Ohio law I've seen in my little stubs.
"* * *
Q. "You mentioned you would look to the auto renewal statement for the purpose of determining what coverages you had. If you had a question, though, about the scope of a coverage or whether it applied in a certain situation, what would you do to resolve that question? A."I would probably get a hold of my insurance agent. He's the arm of State Farm, so he's the one with all the knowledge."
DiPalma similarly testified:
A: "* * *
"In the case of insurance policies, car insurance, half the time I do not understand what they are talking about, so I rely on the person who is the representative of the company to tell me in simple terms what things mean.
Q: "Now, I think I understand. So you might have the insurance company or ask the representative or the agent for an explanation of what the policy means or what language in the document might mean?
A."Right. Exactly."
 {¶ 47} When read in the light most favorable to Appellants, DiPalma and Heiland's testimony warrants the inference that they relied on State Farm to provide them with information, such as changes in the law, that impact purchasing decisions. State Farm had fostered a trusting relationship with DiPalma and Heiland and they, in turn, were accustomed to this relationship. Construing the evidence in the light most favorable to Appellants, DiPalma and Heiland's testimony creates at least a genuine issue of material fact as to whether they relied on the duty which State Farm assumed. Temple, 50 Ohio St.2d at 327.
 {¶ 48} Under Ohio law, "reliance" and "increased risk of harm" are alternative means of establishing proximate cause and Appellants only need to establish one to avoid summary judgment.Rine, 113 Ohio App.3d at 118; Wissel v. Ohio High SchoolAthletic Assn. (1992), 78 Ohio App.3d 529, 540 (recognizing that to establish an assumed duty claim, one must demonstrate that the "alleged failure to exercise reasonable care either (a) increased the risk of harm, or (b) induced detrimental reliance"). In light of our disposition of the "reliance" element, we need not examine the "increased risk of harm" element.
Physical Injury
 {¶ 49} Although the trial court held that Appellants had failed to allege any physical injury, we are mindful that the court did not exclude the possibility that Appellants could
allege physical injury. The relevant portion of the trial court's order states:
"The Court first finds that summary judgment on the Plaintiffs' assumed duty claim is appropriate because the Plaintiffs have not alleged any physical injury. Even if a physical injury wasalleged, summary judgment is appropriate because the Plaintiffs have failed to allege or established (SIC) that they relied upon any assumed duty of State Farm to disclose changes in Ohio law and because the Plaintiffs have failed to establish that State Farm's failure to follow an assumed duty increased the Plaintiffs' risk of harm." (Emphasis added).
 {¶ 50} Appellants have asserted an economic injury, i.e. payment of insurance premiums that provided no additional insurance protection, and contend that such injury suffices as a "physical injury." Appellants cite Grange, 143 Ohio App.3d 332, a case that both the trial court and both parties heavily relied upon, in support of this contention. The Grange court held that, through its past practices, an insurance company could obligate itself to disclose changes in the law which impact coverage. Under this reasoning, a plaintiff could allege a viable breach of assumed duty claim notwithstanding the lack of physical injury. Id. at 339.
 {¶ 51} We are not persuaded by this argument. Foremost, we note that the Grange decision is devoid of any discussion of the specific elements of an assumed duty claim — let alone the physical injury element. Id. Moreover, Appellants have cited no authority, nor can we find any, that expressly allowed recovery under an assumed duty claim despite the lack of physical injury. Our review of relevant case law persuades us that a claimant must demonstrate physical injury, not mere economic loss, in order to state a viable breach of assumed duty claim. See Iron WorkersLocal Union No. 17 Ins. Fund v. Philip Morris Inc. (N.D. Ohio 1998), 23 F.Supp.2d 771, 794 (applying Ohio law and holding that plaintiffs could not establish a claim under breach of assumed duty where they failed to allege physical harm); Briere,22 Ohio St.2d 166 (citing 2 Restatement of Law, Torts, 2d Section 323 and holding employee liable for co-worker's injuries where employee voluntarily assumed duty to assist co-worker in moving scaffolding and co-worker fell); Rine, 113 Ohio App.3d at 118
(finding that fraternity did not assume duty to protect student who was allegedly sexually assaulted) and Wissel,78 Ohio App.3d at 540 (plaintiff could not recover under assumed duty claim for injuries sustained in football game where they could not establish reliance on actions of defendants). See alsoSeley, 67 Ohio St.2d at 202. Absent evidence of physical injury, we must affirm the trial court's grant of summary judgment on Appellants' assumed duty claim. Appellants' third assignment of error is overruled.
 III. {¶ 52} Appellants' first and second assignments of error are sustained. Appellant's third assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part and the cause remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Carr, J., Concurs
[1] The Ohio Supreme Court announced its decision in Martin
on October 5, 1994. Martin, 70 Ohio St.3d 478. The legislation overruling Martin passed and was signed into law in early June 1997. This new legislation took effect on September 3, 1997.
[2] This case was originally filed by Delmas Baughman, who passed away shortly after the commencement of this litigation. Cora Baughman, administratrix of his estate, was substituted in his place. Cora Baughman was later dismissed as a named plaintiff. Consequently, only Rosemarie DiPalma and Gary Heiland remain as class representatives.
[3] 2 Restatement of Law, Torts, 2d Section 323 states:
"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
"(a) his failure to exercise such care increases the risk of such harm, or
"(b) the harm is suffered because of the other's reliance upon the undertaking."