[Cite as *Kemp v. Reno*, 2011-Ohio-4168.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| DAVID KEMP, et al. | | C.A. No. 10CA0033-M |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO CASE No. 04 CIV 0171 |
| BLAKE RENO, et al. | | |
| Appellees | | |

DECISION AND JOURNAL ENTRY

Dated: August 22, 2011

MOORE, Judge.

{¶1} Appellants, David Kemp, Francyne Kemp, Robert A. Furr, Benjamin Kemp, Diana Kemp, Kenneth Kiemschies, James T. Mapes, Kurt Shadi, Sharon Simpson, Charles Stangle, Diana Sutton, Steven Sutton, Andrea Watkins, John Watkins, and Steven Wood, appeal the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Blake Reno, a defendant in the underlying action, created two corporations known as Central Enterprise Limited Company ("CELCO") and Youngstown Urban Development Agency Corp. ("YUDA"). Through CELCO, Reno would locate investment properties, negotiate a sales price with the seller, and find an investor to buy the property. Unbeknownst to the investors, Reno would negotiate a purchase price with the sellers at an amount much lower than he had told the investors. He would obtain a mortgage, based on inflated appraisals, in the investors' names for the higher amount. At closing, the excess money was paid from the seller's

proceeds to CELCO for work which was supposed to be performed at the property after closing in order to make the property suitable for leasing. The investors would then enter into a lease agreement with YUDA. Upon CELCO's completion of the repairs, YUDA was to find a tenant for the property. For each month that the property was rented to a third party tenant, the investor was to receive $100 from YUDA or CELCO. CELCO or YUDA also paid the investors a $1,200 to $2,000 security deposit for each property that the investors purchased. Essentially, Reno promised each investor that they could buy properties without having to expend any money up front and then his companies would renovate the properties and find tenants to lease the property. This was known as the "CELCO System."

{¶3} On February 26, 2001, Appellant Diana Kemp was hired by Reno to be his personal assistant and bookkeeper at CELCO. Diana handled the billing, invoicing, accounts receivable, and accounts payable for CELCO. She testified that she knew that Reno did not buy any of the properties in his own name because his credit was too poor to allow him to obtain financing. In 2002 she bought two properties through the CELCO System. She also referred her husband, Ben Kemp, her brother-in-law, David Kemp, his wife, Francine Kemp, her brother, Robert Furr, Diana and Steven Sutton, Sharon Simpson and Kenneth Kiemschies. She received $200 for each referral. Appellant Robert Furr, Diana's brother, also worked for CELCO and referred the remaining Appellants: James Mapes, Kirk Shadi, Charles Stangle, Andrea and John Watkins and Stephen Wood.

{¶4} Appellants purchased a total of sixty-three properties through CELCO. Security Title Agency, Inc., under the company president John Seidner, provided title and escrow services for the closings of fifty-three of these properties. Appellee, First American, was the underwriter for title insurance in those transactions. CELCO did not renovate the properties as promised. In

addition, YUDA had difficulty obtaining and retaining tenants for the properties. YUDA would not pay for the damage caused to some properties by tenants, and ultimately was unable to obtain new tenants for those properties. YUDA eventually defaulted on its lease payments for the properties and Appellants' mortgage payments went into default. Appellants then discovered that the actual value of the properties was less than the mortgage amount or the stated appraisal value.

{¶5}  On October 13, 2004, Appellants filed an amended complaint which named forty-two defendants. They claimed that they had been defrauded through a series of real estate transactions orchestrated by Reno in which they purchased a total of sixty-three properties at inflated prices. Named defendants included Reno, a number of his business associates, property appraisers, mortgage brokers, lenders that financed the transactions, the title/escrow company (Security Title), and Old Republic Title Insurance Company. At the time, Appellants believed that Old Republic was Security Title's underwriter for title insurance. When they discovered that it was actually First American, they filed a motion to substitute Old Republic with First American. The motion was granted by the trial court on November 8, 2004.

{¶6}  First American filed twelve motions for summary judgment against Appellants on June 9, 2005. On July 22, 2005, in a single document, Appellants filed a brief in opposition to the motion filed by First American, as well as numerous other defendants.

{¶7}  On July 19, 2006, the trial court granted First American's motion for summary judgment. On May 19, 2010, the trial court entered a final judgment entry granting default judgment against the remaining defendants whose claims had not been settled or dismissed. Appellants timely filed a notice of appeal and raise one assignment of error.

II.

## ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF [] FIRST AMERICAN TITLE INSURANCE COMPANY[.]"

{¶8} In their sole assignment of error, Appellants argue that the trial court erred in granting summary judgment in favor of First American. We do not agree.

{¶9} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 12.

{¶10} Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

{¶11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead

must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735.

{¶12} First American filed motions for summary judgment against each Appellant. In each motion, First American contended that Appellants could not show that it was liable for negligence because they were unable to show a duty owed by First American to Appellants. In addition, First American argued that Appellants were unable to show a breach of a duty, causation or damages to Appellants caused by the breach. Essentially, First American argued that as a title insurance company, it was governed by Chapter 3953 of the Ohio Revised Code. As such, it only insures against financial loss from defects in the title to the underlying real property. It noted that Appellants failed to present any case law to support their contention that the title insurance company owed a duty of due diligence to them. In addition, First American stressed that Appellants were not attempting to make a claim on a title insurance policy. Instead, they were essentially attempting to collect from First American for their own failures to exercise due diligence in their investments.

{¶13} As to the claim that First American assumed a duty to Appellants by reviewing the CELCO System and the underlying transactions, First American pointed out that the depositions cited by Appellants for this proposition never mentioned First American, but rather another title insurance company, "Old Republic." First American contended that there was no evidence that it conducted any such review or assumed any such duty. Finally, First American contended that Appellants' claims that the closings were not completed or were "defective, unauthorized or incorrect" was not supported by any evidence.

{¶14} In their memorandum in opposition to summary judgment, Appellants alleged that First American did owe a duty to adequately review the actions of Security Title and the real

estate transactions, and that it failed to perform these duties. Specifically, they argued that First American, as the insurer of Security Title, "should have known that the closings were inappropriate." In addition, they claimed that it was "clear that First American undertook a duty to review and insure the transactions." Appellants cited to no case law or evidentiary material in the record to support this contention.

{¶15} Appellants also argued that First American insured them "against the improper actions of Security Title." As support, they referenced a "Closing Protection Letter" that was issued by First American. They argued that, under this letter, First American "assumed a duty to insure the wrongful actions of John Seidner and Security Title." Again, they cited no case law to support this contention.

{¶16} In its reply, First American argued that Appellants were attempting to make two new arguments for liability, and that each argument failed as a matter of law. As to the claim that First American reviewed the transactions of the CELCO System and approved the transactions, First American once again pointed to Reno's deposition in which he stated that Old Republic was the company that reviewed the CELCO System transactions. In addition, First American referenced the deposition of Seidner who testified that First American had not reviewed or audited any of his transactions, and that, to his knowledge, it had not looked at any of the transactions involving CELCO or Reno. Again, First American stressed that there was no evidence or testimony that it reviewed the transactions or assumed any duty.

{¶17} First American also argued that it was not liable to Appellants under the Closing Protection Letter. It averred that a closing protection letter is a contract and that Appellants had not asserted a contract claim. The language of the letter required Appellants to make a claim according to the instructions in the letter, and Appellants made no such claims. While

Appellants argued that Seidner and Security Title breached a duty to the buyers by making disbursements to CELCO, the evidence attached to First American's reply demonstrated that it was the sellers' funds, not the buyers', from which the disbursements were made. Accordingly, it argued, it was not liable to Appellants under the Closing Protection Letter. The trial court granted summary judgment in favor of First American.

{¶18} On appeal, Appellants reiterate their arguments from their brief in opposition filed in the court below. Specifically, they assert that First American assumed a duty to them by reviewing the CELCO System and that it breached that duty by allowing the "fraudulent CELCO system transactions to go forward to the detriment" of Appellants. The question of whether or not a legal duty exists is a question of law for the court. *Baughman v. State Farm Mut. Auto Ins. Co.*, 9th Dist. No. 22204, 2005-Ohio-6980, at ¶18. As First American correctly pointed out, there is no evidence that First American reviewed the CELCO System. The only evidence in the record demonstrates that Old Republic, another title insurance company, reviewed the transactions and provided advice to Reno on the system. While Appellants urge us to assume that Reno was mistaken in his deposition, and that he meant First American, there is nothing in the record that allows us to do so. In addition, Seidner's deposition expressly states that First American did not review the transactions. Appellants have failed to cite any legal authority which would allow this Court to impose an assumed duty upon First American. Case law indicates that "title insurance companies are not held liable in tort for claims by an insured regarding title searches, escrow, or closing matters." *Countrywide Home Loans, Inc. v. Huff*, 11th Dist. No. 2007-T-0121, 2008-Ohio-4974, at ¶38, citing *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270.

{¶19} Appellants have also failed to demonstrate that First American assumed a duty. Under Ohio's assumed duty doctrine, "one who gratuitously undertakes a voluntary act assumes the duty to complete it with the exercise of due care under the circumstances." *Seley v. G. D. Searle & Co.* (1981), 67 Ohio St.2d 192, 202, citing *Briere v. Lathrop* (1970), 22 Ohio St.2d 166, 172. To recover for a breach of assumed duty, Appellants would need to demonstrate (1) reliance on an assumed duty, or an increased risk of harm, and (2) physical injury (in medical negligence matter). *Seeley*, 67 Ohio St.2d at 202. "[A] claimant must demonstrate physical injury, not mere economic loss, in order to state a viable breach of assumed duty claim." *Baughman v. State Farm Mut. Auto Ins. Co.*, 9th Dist. No. 22204, 2005-Ohio-6980, at ¶51. The facts indicate that Appellants admitted that they did not speak with anyone at First American prior to closing, so they could not have relied on First American. Accordingly, this argument is without merit.

{¶20} Next, Appellants argue that First American is liable to them under the Closing Protection Letter. As discussed above, Appellants are not asserting a breach of contract claim. Instead they are attempting to create a negligence claim out of the notion that First American's issuance of this letter insured them from the wrongful acts of Seidner and Security Title. Appellants have failed to establish that they are entitled to closing protection coverage. A single Closing Protection Letter was issued to Equi First, a lender, in one of the sixty-three real estate transactions. It provides coverage to Equi First if it purchases a title insurance policy from First American in connection with the closing of a real estate transaction in which Equi First obtains a mortgage on the property. The letter extends coverage to Equi First borrowers only if the borrowers purchase an "Owner's Policy of Title Insurance" from First American. Nothing in the record demonstrates that Appellants did so. Accordingly, Appellants have failed to demonstrate

that they are entitled to closing protection coverage. In addition, Appellants have failed to demonstrate that their claims are covered by the protection letter. They claim that First American is liable to them based on the actions by Seidner and Security Title that constituted fraud. However, the depositions demonstrate that Appellants testified that they did not know of any acts of fraud or other wrongdoing committed by Security Title. Instead, the record demonstrates that Appellants entered into business transactions without conducting the appropriate due diligence, and now seek indemnification from any and all parties involved in the transactions, including the title insurance company. Because Appellants were unable to demonstrate a genuine issue of material fact, including a duty owed to them by First American, or liability under the Closing Protection Letter, summary judgment was appropriate. Accordingly, Appellants' sole assignment of error is overruled.

III.

{¶21} Appellants' assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS

CARR, P. J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

THEODORE J. LESIAK, Attorney at Law, for Appellants.

DAVID A. FREEBURG and MONICA E. RUSSELL, Attorney at Law, for Appellees.